UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

<table>
<tr><td>M. WILLIAM POTTS,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td> Petitioner,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td> v.</td><td>)</td><td>Civil Action No. 04-40068-GAO</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>DAVID L. WINN,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td> Respondent.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**MEMORANDUM OF RESPONDENT DAVID L. WINN
IN OPPOSITION TO PETITIONER'S REQUEST FOR RELIEF
AND IN SUPPORT OF MOTION TO DISMISS**

The petitioner M. William Potts, an inmate at Federal Medical Center, Devens, seeks habeas relief under 28 U.S.C. § 2241, alleging that the Federal Bureau of Prisons ("BOP") has improperly applied a December 2002 BOP change in policy concerning placement in a Community Corrections Center ("CCC"). For the reasons stated below, the petition fails to state a claim upon which relief can be granted and must therefore be dismissed.

**STATEMENT OF FACTS**[1]

After pleading guilty on August 4, 2003, to one count of mail fraud, the Petitioner was sentenced on November 3, 2003, by the United States District Court for the District of Massachusetts to a term of imprisonment of 21 months followed by three years of supervised release and to pay restitution in the

---

[1] In accordance with the standard of review upon a motion to dismiss, the well-pleaded factual allegations of the petition are accepted as true for purpose of this motion. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir.1994).

amount of $1,357,603.00.[2]  The Petitioner surrendered voluntarily
to the custody of the BOP on December 3, 2003, at the Federal
Medical Center, Devens, Massachusetts ("FMC Devens"), where he is
presently incarcerated.

Assuming good behavior, the Petitioner's projected release
date is June 11, 2005.[3]  Also, in accordance with a new practice
established in December 2002, the Petitioner will be eligible for
placement in a CCC (or halfway house) for the last ten percent of
his sentence, beginning April 18, 2005.[4]  The Petitioner contends
that the December 2002 change in practice concerning CCC
placement is unlawful and that he is entitled to be considered
for a six month CCC placement.

A review of the SENTRY database indicates that the
Petitioner filed a Request for Administrative Remedy, Case Number
33163-F1, on or about April 12, 2004.[5]  The Request raised the
Petitioner's eligibility for a full 6 month placement to a
Community Corrections Center (CCC).[6]  The Petitioner's Request

---

[2] See Declaration of Patrick Ward ("Ward Decl.") attached
as Exhibit 1, Document A, Public Information Data Sheet.

[3] See Ward Decl., Document B, Sentence Monitoring
Computation Data.

[4] Id.

[5] See Ward Decl., Document E, Administrative Remedy
History.

[6] See Ward Decl., Document F, Request for Administrative
Remedy, Case Number 33163-F1, and Response.

was denied by Respondent, Warden Winn, on or about April 30, 2004.[7] Subsequently, on or about May 5, 2004, the Petitioner filed a Regional Administrative Remedy Appeal, Case Number 331631-R1, to the Bureau of Prisons' Regional Director in Philadelphia.[8]  The Petitioner's Appeal was denied by the Regional Director on or about June 1, 2004.[9]  Subsequently, on or about June 14, 2004, the Petitioner filed a Central Office Administrative Remedy Appeal, Case Number 331631-A1, to the Bureau of Prisons' Central Office in Washington, D.C.[10]  The Response for that appeal remains pending at this time.  As such, the Petitioner has not exhausted his administrative remedies.

**ARGUMENT**

I.   **THE PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AS REQUIRED UNDER THE PRISON LITIGATION REFORM ACT.**

The Prison Litigation Reform Act of 1995, as amended 42 U.S.C. 1997e (a) ("PLRA"), requires a prisoner to exhaust his administrative remedies before suing over prison conditions. Porter v. Nussle, 534 U.S. 516, 520 (2002); Booth v. Churner, 532 U.S. 731, 734 (2001).  In Booth v. Churner, the United States

---

[7]   Id.

[8]   See Ward Decl., Document G, Regional Administrative Remedy Appeal, Case Number 33163-R1, and Response.

[9]   Id.

[10]   See Ward Decl., Document H, Central Office Administrative Remedy Appeal, Case Number 33163-A1.

Supreme Court held that under the PLRA, an inmate seeking only money damages must complete any prison administrative remedy process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief.  Id. at 1824.  See also Rogers v. United States, 180 F.3d 349, 357 (1st Cir. 1999), cert. denied, 528 U.S. 1126(2000)(once administrative remedies are exhausted, prisoners may then seek review by filing a habeas petition under 28 U.S.C. § 2241); Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000)(PLRA makes exhaustion mandatory in all cases); Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir. 1998)(futile and inadequate nature of administrative remedy did not preclude mandatory exhaustion requirement of the PLRA).

In the ordinary course of business, computerized indexes of all administrative requests and appeals filed by inmates are maintained in the BOP's computerized data base so rapid verification may be made as to whether an inmate has exhausted the administrative remedy process on a particular issue.[11] Also, hard copies of all administrative remedies that are filed through the Regional and Central Office levels are maintained at the Northeast Regional Office, so a review of the issues raised in each administrative remedy could be made.[12]

---

[11]  See Ward Decl. attached as Exhibit 1.

[12]  Ibid.

4

A review of the SENTRY database indicates that the
Petitioner filed a Request for Administrative Remedy, Case Number
33163-F1, on or about April 12, 2004.[13] The Request raised the
Petitioner's eligibility for a full 6 month placement to a
Community Corrections Center (CCC).  The Petitioner's Request was
denied by Respondent, Warden Winn, on or about April 30, 2004.[14]
Subsequently, on or about May 5, 2004, the Petitioner filed a
Regional Administrative Remedy Appeal, Case Number 331631-R1, to
the Bureau of Prisons' Regional Director in Philadelphia.[15]  The
Petitioner's Appeal was denied by the Regional Director on or
about June 1, 2004.[16]  Subsequently, on or about June 14, 2004,
the Petitioner filed a Central Office Administrative Remedy
Appeal, Case Number 331631-A1, to the Bureau of Prisons' Central
Office in Washington, D.C.[17]  The Response for that appeal remains
pending at this time.  As such, the Petitioner has not exhausted
his administrative remedies.

Because the plaintiff failed to exhaust his available

---

[13]  See Ward Decl., Document F, Request for Administrative
Remedy, Case Number 33163-F1, and Response.

[14]  Id.

[15]  See Ward Decl., Document G, Regional Administrative
Remedy Appeal, Case Number 33163-R1, and Response.

[16]  Id.

[17]  See Ward Decl., Document H, Central Office Administrative
Remedy Appeal, Case Number 33163-A1.

administrative remedies, the petition must be dismissed as it fails to meet the requirements of the PLRA.

**II.  THE BUREAU OF PRISONS HAS PROPERLY APPLIED 18 U.S.C. § 3624(c) TO LIMIT THE PETITIONER'S ELIGIBILITY FOR PLACEMENT IN A COMMUNITY CORRECTIONS CENTER TO THE LAST TEN PERCENT OF HIS SENTENCE, NOT TO EXCEED SIX MONTHS.**

Prior to December 2002, it was the policy of the BOP, as expressed in an Inmate Handbook and a BOP document entitled Program Statement Number 7310.04 (December 16, 1998)[18] that it could consider inmates for placement in a CCC for more than the last ten percent of an inmate's term of imprisonment or more than the last six months of the sentence, if appropriate.

On December 13, 2002, the Office of Legal Counsel ("OLC") of the United States Department of Justice issued an opinion concluding that the Federal Bureau of Prisons' ("BOP") former policy of initially designating to CCC's certain defendants sentenced to terms of imprisonment was inconsistent with 18 U.S.C. §§ 3621, 3624(c), and the U.S. Sentencing Guidelines and therefore unlawful.[19]  This opinion also indicated that the BOP's past practice of transferring offenders to CCC's for a period exceeding the time limit specified in 18 U.S.C. § 3624(c) (the last ten percent of the term of imprisonment, not to six months)

_____

[18]  Portions of the Program Statement Number 7310.04, dated December 16, 1998, are attached as Exhibit 2.

[19]  The OLC Memorandum is attached as Exhibit 3.

was in violation of 18 U.S.C. § 3624(c) and thus impermissible.[20]
Subsequently, the BOP established procedures for implementing the
policy change.[21]

The Petitioner does not develop any independent argument
concerning the December 2002 change in policy, but instead simply
refers to a number of district court opinions that have ruled
that the change of policy is unlawful.  See, e.g., Monahan v.
Winn, 276 F.Supp.2d 196, 198 (D. Mass. 2003) (collecting cases).[22]
Accordingly, the Respondent herein will address the major
arguments presented in those other cases.

At the outset, the Respondent notes that other courts have
upheld the validity of the BOP policy.  Cohn v. Federal Bureau of
Prisons, 302 F.Supp.2d 267 (S.D.N.Y. 2004); Benton v. Ashcroft,
273 F.Supp.2d 1139 (S.D. Cal. 2003), appeal docketed, 9th Cir.
No. 03-56343.  Most of the courts that have ruled against the
government have done so in the context of so-called "front end"
cases, where the policy has been applied to prohibit placement in
a CCC at the outset of the prisoner's sentence.  In contrast, a

---

[20]    See OLC Memorandum, n.6.

[21]    See BOP Memorandum to BOP Chief Executive Officers,
December 20, 2002, attached as Exhibit 4.

[22]    And see Grimaldi v. Menifee, 2004 WL 912099 (S.D. N.Y.
Apr. 29, 2004); Crowley v. Federal Bureau of Prisons, 2004 WL
516210 (S.D. N.Y., March 4, 2004); DiStefano v. Federal Bureau of
Prisons, 2004 WL 396999 (S.D. N.Y., March 4, 2004); Zucker v.
Menifee, 2004 WL 102779 (S.D. N.Y., Jan 21, 2004); Colton v.
Ashcroft, 299 F.Supp.2d 681 (E.D. Ky., Jan. 15, 2004).

number of courts have upheld the policy as applied to the "back end" situation, such as that presented here, where the Petitioner seeks to increase the period of his CCC placement at the tail end of his sentence.  See Turano v. Winn, Civ. No. 03-40188-EFH (D. Mass., Order of Dismissal dated Jan. 7, 2004); Goldings v. Winn, Civ. No. 03-40161-WGY (D. Mass., Memorandum and Order dated Oct. 23, 2003, appeal docketed, No. 03-2633 (1st Cir. argued May 7, 2004); United States v. Mikutowicz, 2003 WL 21857885 (D. Mass. Aug. 6, 2003); Rothberg v. Winn, 03-CV-11308-RGS (D. Mass. 2003); Kennedy v. Winn, Civ. No. 03-10568-MEL (D. Mass. July 9, 2003).[23]

**A.    The New BOP Policy Is a Correct Application of the Law.**

In reviewing an agency's construction of a statute, courts apply the two-pronged test set forth in Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  First, a court must determine whether Congress has directly spoken to the precise question at issue.  Id. at 842.  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 843.  Second, if the statutory language is silent or ambiguous, deference is then to be afforded the agency's interpretation if it is based on a "permissible" construction of the statute.  Id.  While an

_____

[23]  Copies of these decisions are collected in Exhibit 5 hereto.

interpretation that has not been promulgated pursuant to the
notice and comment rules of the Administrative Procedures Act
("APA"), 5 U.S.C. § 553, or reduced to a formal regulation, is
not entitled to "full" deference, a permissible interpretation is
still entitled to respect.  Reno v. Koray, 515 U.S. 50, 61 (1995)
("BOP's internal agency guideline . . . is still entitled to some
deference, since it is a permissible construction of the
statute"); see also Alaska Dept. of Env. Cons. v. Environmental
Protection Agency, – U.S. –, 124 S.Ct. 983, 1001 (2004); Skidmore
v. Swift & Co., 323 U.S. 134, 140 (1944).

The starting point of analysis is 18 U.S.C. § 3624(c).  This
section provides:

> **Pre-release custody.**  The Bureau of Prisons
> shall, to the extent practicable, assure that
> a prisoner serving a term of imprisonment
> spends a reasonable part, not to exceed six
> months, of the last 10 per centum of the term
> to be served under conditions that will
> afford the prisoner a reasonable opportunity
> to adjust to and prepare for the prisoner's
> re-entry into the community.  The authority
> provided by this subsection may be used to
> place a prisoner in home confinement.  The
> United States Probation System shall, to the
> extent practicable, offer assistance to a
> prisoner during such pre-release custody.

There can be little doubt that this language limits the
period for a prisoner's placement in a CCC to the "last 10 per
centum" of the prisoner's sentence of imprisonment, "not to
exceed six months."  It is true that the court in Iacaboni v.
United States, 251 F.Supp.2d 1015 (D. Mass. 2003), concluded that

9

§ 3624(c) has nothing to do with community confinement but instead merely authorizes the BOP to transfer an offender to <u>home confinement</u> for up to six months of the final portion of his sentence.  251 F.Supp.2d at 1029-30.  But this conclusion is unsupported by the statutory language and is discredited by the history of the statute.  When section 3624(c) was first enacted in 1984, it did not include the sentence regarding "home confinement."  Pub. L. 98-473, 98 Stat. 2009.  That sentence was added by the Crime Control Act of 1990.[24]  Had Congress intended to limit the application of § 3624(c) to home confinement, it surely would have said so in 1984.  Accordingly, § 3624(c) applies to CCC placement.

Some courts have concluded that the temporal limitation of § 3624(c) is subject to a broader authority granted by 18 U.S.C. § 3621(b).  <u>E.g.</u>, <u>Monahan v. Winn</u>, 276 F.Supp.2d at 212.  This latter section grants the BOP the exclusive authority to "designate the place of the prisoner's imprisonment."  It further provides that the BOP "may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable, considering . . . [five specified factors]."  Some district courts have concluded

---

[24]  Pub. L. No. 101-647, 1990 U.S.C.C.A.N. 4789, 4913.  The legislative history of this amendment is discussed <u>infra</u>.

that a "penal or correctional facility" includes a CCC, and the
broad language of this section therefore grants the BOP authority
to place an inmate in a CCC at any time, including for a period
longer than the period authorized in § 3624(c).  Under this
interpretation, the BOP could, in theory, designate a convicted
murderer sentenced to life imprisonment to serve his entire
sentence in a halfway house.

This argument cannot be squared with the plain meaning of
§ 3624(c) and elemental rules of statutory construction.  It
simply cannot be true that § 3624(c) limits placement in a CCC to
the shorter of six months or the last 10 percent of the
prisoner's term, and also be true that § 3621(b) allows placement
in a CCC at any time during the prisoner's sentence.  Such an
interpretation of § 3621(b) would effectively render § 3624(c) a
nullity.  It is well settled that a provision of a statute will
not be read in a way that renders another provision of the same
statute superfluous.  Duncan v. Walker, 533 U.S. 167, 174 (2001);
Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998).[25]  In addition, "it
is a basic principle of statutory construction that a specific

---

[25] And see Vimar Seguros Y Reaseguros, S.A. v. M/V Sky
Reefer, 515 U.S. 528, 533 (1995) ("'[W]hen two statutes are
capable of co-existence, . . .  it is the duty of the courts,
absent a clearly expressed congressional intention to the
contrary, to regard each as effective.'" (Quoting Morton v.
Mancari, 417 U.S. 535, 551 (1974), and Pittsburgh & Lake Erie R.
Co. v. Railway Labor Executives' Ass'n, 491 U.S. 490, 510
(1989)).

statute . . . controls over a general provision . . . ."
HCSC-Laundry v. United States, 450 U.S. 1, 6 (1981).  Section
3624(c) is very specific as regards placement of offenders in
CCCs.  Section 3621(b), on the other hand, is general.

In Monahan v. Winn, 276 F.Supp.2d 196, 210-11 (D. Mass.
2003), the court argued that sections 3621(b) and 3624(c)
accomplished two separate and ostensibly compatible objectives:
section 3621(b) *allows* the BOP to designate a prisoner to a CCC
at any time during the prisoner's sentence, while section 3624(c)
*requires* the BOP to "assure" that the prisoner spends the last
part of his sentence (10 percent, not to exceed six months) under
pre-release conditions.[26]  276 F.Supp.2nd at 210-211 & n.11.

The fundamental flaw in this argument is that § 3621(b) does
not contain the broad grant of authority that some courts have
ascribed to it.  Contrary to the view expressed in Monahan, the
history of section 3621(b) demonstrates that Congress did not
establish a broad discretion in the BOP to place a prisoner in a
CCC at any time during the prisoner's term of imprisonment.
Before the Sentencing Reform Act of 1984, 18 U.S.C. § 4082(b),
which was the predecessor to § 3621(b), did indeed give the
Attorney General broad authority to place a prisoner in a CCC.

_____

[26]  Accord Cato v. Menifee, No. 03-Civ. 5795(DC), 2003 WL
22725524 (S.D.N.Y., Nov. 20, 2003).  Contra, United States v.
Mikutowicz, 2003 WL 21857885 (D. Mass. Aug. 6, 2003) ("The six
month figure is a maximum time within that final ten percent");
Kennedy v. Winn, Civ. No. 03-10568-MEL (D. Mass., July 9, 2003).

It provided in part that the Attorney General "may designate as a place of confinement any available, suitable, and appropriate institution or facility . . . ." 18 U.S.C. § 4082(b) (1982). The words "penal or correctional" did not appear in this section. And § 4082(f) provided that, "[a]s used in this section – the term 'facility' shall include a residential community treatment center." Id. But when the law was re-written in 1984, Congress made significant changes. First, Congress added the modifying words "penal or correctional," so that now the BOP, under the new § 3621(b), "may designate any available <u>penal or correctional</u> facility. . ." (emphasis added). Pub. L. 98-473, Title II, § 212(a)(2), 98 Stat. 2007 (1984). Second, Congress stripped the definition of "facility" from the new section 3621.[27] Id. Third, a new section 3624(c) was added to create an express but carefully circumscribed authority in the BOP to place a prisoner in a CCC for the last ten percent, not to exceed six months, of the prisoner's term of imprisonment. Id. 98 Stat. 2008. The only possible explanation for these statutory changes is that Congress intended to modify the BOP's traditional authority so as to limit the authority to place a prisoner in a CCC.

This conclusion is also consistent with the larger scheme of

_____

[27] A similar definition of "facility" was retained in the substantially-revised version of § 4082, but that section now addresses escape from confinement and sharing of information about prisoners confined in community treatment centers. 18 U.S.C. § 4082(c). It is therefore of no relevance here.

the Sentencing Reform Act of 1984.  Placement of an offender in a
CCC is expressly authorized as a condition of probation.  18
U.S.C. § 3563(b).  It is also authorized as a condition of
supervised release.  <u>See</u> <u>United States v. Bahe</u>, 201 F.3d 1124
(9th Cir. 2000).  It is <u>not</u> authorized as a permissible part of a
term of imprisonment.  <u>See</u> 18 U.S.C. §§ 3581, 3582.[28]  Moreover,
the U.S. Sentencing Guidelines, which are a congressionally-
authorized implementation of the Sentencing Reform Act and thus
entitled to substantial deference, parallel this scheme.  The
Guidelines clearly indicate that "imprisonment" does *not* include
placement in a CCC.  <u>See</u> <u>United States v. Cintrón-Fernández</u>, 356
F.3d 3340 (1st Cir. 2004).[29]  It would be incongruous, to say the
least, to interpret § 3621(b) to authorize the BOP to do what is
prohibited by the sentencing provisions of Title 18 and the

---

[28]  Correction and rehabilitation, which are recognized
objectives of CCC placement, are appropriate goals of probation
and supervised release.  <u>See</u> 18 U.S.C. §§ 3563(b), 3553(a)(2)(D);
S. Rep. 98-225 at 124 ("the primary goal of [supervised release]
is to ease the defendant's transition into the community . . . ,
or to provide rehabilitation"), <u>reprinted in</u> 1984 U.S.C.C.A.N. at
3307; <u>and</u> <u>see</u> <u>Johnson v. United States</u>, 529 U.S. 53, 59-60
(2000).  In contrast, "imprisonment is *not* an appropriate means
of promoting correction and rehabilitation."  18 U.S.C. § 3582(a)
(emphasis added); <u>see</u> S. Rep. No. 225 at 67 n.140, 76, <u>reprinted
in</u> 1984 U.S.C.C.A.N. at 3250, 3259.  This further supports the
distinction between imprisonment and placement in a CCC.

[29]  Consistent with the overall scheme of Title 18's
sentencing provisions, the Sentencing Guidelines authorize
placement in a CCC as a condition of probation, USSG
§ 5C1.1(c)(3), or as a condition of supervised release  USSG
§ 5C1.1(d)(2).

Sentencing Guidelines.  Accordingly, there is no merit to the
contention that § 3621(b) authorizes a prisoner's placement in a
CCC for longer than the period prescribed by § 3624(c).

Further, the argument advanced by the court in Monahan would
in fact effectively negate the temporal limitation of § 3624(c).
The directive of § 3624(c) is a qualified one and does not
mandate any pre-release placement or give rise to an enforceable
right on the part of the prisoner.  See United States v.
Restrepo, 999 F.2d 640, 645 (2nd Cir. 1993) ("the statute does
not on its face require the Bureau to ensure that all prisoners
participate in such a program, but only to do so if
practicable."); United States v. Loughlin, 933 F.2d 786, 789 (9th
Cir. 1991) ("Nothing in the language of section 3624(c) mandates
that all prisoners pass through a community treatment center en
route to free society.").  Consequently (and particularly in the
circumstances presented here), the nature of the "discretion"
that the court in Monahan would have the BOP exercise under
section 3621(b) is for all practical purposes identical to that
exercised under section 3624(c) – the only difference being the
temporal limit on CCC placement.  Thus, the distinction drawn by
the court in Monahan makes no practical sense.  And there is no
hint of a congressional intent to authorize two analytically
separate but practically redundant systems for administering

15

community confinement.[30]  In short, the analysis in <u>Monahan</u> should be rejected.

The Supreme Court's decision in <u>Reno v. Koray</u> does not support the Petitioner's position.  The issue in <u>Koray</u> was whether time spent at a CCC before trial pursuant to a § 3142(c) bail release order, while in the custody of Pretrial Services, counted as "official detention" for purposes of prior custody credits under 18 U.S.C. § 3585(b).  <u>Koray</u>, 515 U.S. at 54-55. The Court held that such confinement was not "official detention" for purposes of that statute.  The prisoner in that case argued that the nature of his confinement was no different than CCC placement while in BOP custody pursuant to the BOP's then-extant policy of placing prisoners in CCCs under its pre-December 2002 interpretation of § 3621(b).  515 U.S. at 62.  The Supreme Court simply noted the prisoner's argument, and, without opining on the validity of the BOP's interpretation of § 3621(b), rejected the argument on the ground that CCC placement in the custody of the BOP is different than placement in the custody of Pretrial Services.  <u>Id</u> at 62-63.  The Supreme Court did not opine on the proper interpretation of § 3621(b).

**B.    The Legislative History Supports the BOP's Position**

---

[30]  In different contexts, the BOP does distinguish between discretionary CCC placement by the BOP and mandatory CCC residence resulting from a condition of probation or condition of supervised release.  <u>See</u> App. 158-59.

16

The legislative history supports the BOP's position.[31] Section 3581(a) of Title 18 U.S.C. provides that a person found guilty of any offense "may be sentenced to a term of imprisonment." In drafting this section, the Senate Judiciary Committee did not follow a recommendation which would have precluded imprisonment for persons committing the lowest class of crimes. In the bill submitted to the Senate floor (later enacted), every offense under the Act could lead to a term of prison. S. Rep. 225 at 113, reprinted in 1984 U.S.C.C.A.N. at 3297. In justifying this provision, the Committee noted that "the shock value of a brief period *in prison* may have significant special deterrent effect." Id. at 114 (1984 U.S.C.C.A.N. at 3297) (emphasis added). The Committee added that "[a] sentence imposed by a judge pursuant to section 3581 will represent the actual period of time that the defendant will spend *in prison*[.]" Id. at 115 (1984 U.S.C.C.A.N at 3298) (emphasis added). See Benton v. Ashcroft, 273 F.Supp.2d 1139 (S.D. Cal. 2003) (upholding the BOP policy change), appeal docketed, 9th Cir. No. 03-56343. Thus, in considering and voting on the Senate bill, the Committee apparently did not contemplate that an offender sentenced to "imprisonment" would be incarcerated in any

---

[31] See Arnold v. United Parcel Service, Inc., 136 F.3d 854, 858 (1st Cir. 1998) ("If the text is not unambiguously clear, however, we are obliged to turn to other sources to discern the legislature's meaning. One important source, of course, is the legislative history.").

facility other than a prison, even if he committed only a minor infraction.

The court in <u>Iacaboni</u>, in discussing the meaning of § 3621(b), relied on an excerpt from the Senate Judiciary Committee report, which noted that "[p]roposed 18 U.S.C. § 3621(b) follows existing law . . . ."  The court found in this excerpt an intent that the BOP retain its preexisting authority to place prisoners in CCCs.  251 F.Supp.2d at 1025, quoting from S. Rep. No. 225 at 141-42.  Not only did the district court fail to recognize the significance of the 1984 statutory changes (discussed above), but the court omitted important language from its quote.  The full quote from the Judiciary Committee states: "Proposed 18 U.S.C. § 3621(b) follows existing law *in providing that the authority to designate the place of confinement for federal prisoners rests in the Bureau of Prisons*."  <u>Id</u>. at 141, <u>reprinted in</u> 1984 U.S.C.C.A.N. at 3324 (omitted portion in italics).  A footnote at this part of the Committee Report cites to <u>McIntyre v. United States</u>, 271 F. Supp. 991, 999-1000 (S.D. N.Y. 1967), <u>aff'd</u> 396 F.2d 859 (2nd Cir. 1968).  In that case the court ruled that a federal court has no power to order a term of imprisonment to run concurrently with a state sentence, since that would be tantamount to designating the prisoner's place of confinement, which is a power entrusted to the Attorney General, not the sentencing court.  In its full context, the Judiciary

Committee's statement is simply an affirmation of the fact that the BOP, not the sentencing court, has exclusive power to designate the place of imprisonment.  It says nothing about whether § 3621(b) encompasses the authority to place a prisoner in a CCC.

As discussed above, the sentence in 3624(c) regarding "home confinement" was added by the Crime Control Act of 1990.[32]  As introduced, the bill originally included amendments to Title 18 meant to enlarge BOP's power "to place inmates in community corrections programs and home confinement."  H.R. Rep. 101-681(I), at 73 (Sept. 5, 1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6477.  Section 1404 of Title XIV would have amended 18 U.S.C. § 3621(b) to strike the phrase "penal or correctional facility that meets minimum standards of health and habitability established by the Bureau," and replace it with "suitable, and appropriate institution, facility, or program, and where appropriate, to a home detention program."  H.R. 5269, 101st Cong. (1990), 136 Cong. Rec. 27, 316, 27,330 (Oct. 3, 1990) (reproduced at App. 72).[33]  The report of the House Judiciary

---

[32]  Pub. L. No. 101-647, 1990 U.S.C.C.A.N. 4789, 4913.

[33]  Sections 1403 and 1404 of the bill (H.R. 5269), would have abolished the limit on the length of the pre-release transition period in 18 U.S.C. § 3624(c) (six months or 10 percent of the sentence, whichever is shorter) and authorized the BOP to place prisoners in community or home confinement for longer periods.  Id.

Committee explained:

> Sections 1403 and 1404 address the
> Federal Bureau of Prisons' authority to place
> inmates in community corrections programs and
> home confinement.  Currently, the Bureau of
> Prisons can only place an inmate in a
> Community Correction Center for up to six
> months or for the last 10 percent of his or
> her sentence, whichever is shorter.  Section
> 1403 would authorize the Bureau of prisons to
> place certain non-violent offenders in
> community facilities for longer time periods
> at the end of their sentences so that they
> can better readjust to society.
> Section 1404 restores the Bureau of
> Prisons' previously existing authority to
> designate an appropriate place for offenders
> to serve their sentences, including Community
> Correction Centers or home confinement.

H.R. Rep. 101- 681(I) at 140, reprinted in 1990 U.S.C.C.A.N. at

6546 (reproduced at App. 77.  Plainly, there would have been no

need to "restore" this power if BOP had it in the first place.

The reference to "previously existing" is also consistent with

the point made above that, after the Sentencing Reform Act

recodified 18 U.S.C. § 4082(g) at section 3621(b), and deleted

the former allowance for BOP to place inmates in "facilities"

(including in a "residential community treatment center"), that

deletion did in fact strip BOP of a pre-existing power to make

such placements.[34]

---

[34]  These conclusions find further support elsewhere in the
House Report, where the Judiciary Committee noted: "Section 1404
amends 3621(b) of title 18, United States Code, to permit the
Bureau of Prisons to assign inmates to any 'suitable, and
appropriate institution, facility, or program, and where
appropriate, to a home detention program.'  Currently, the Bureau

The amendment was opposed by the Department of Justice and certain members of the House.  The latter noted that proposed Section 1404 "would permit the Bureau to place drug felons in treatment programs, thus endangering the community.  The American public wants dangerous felons in jail, not in therapy programs or home detention."  H.R. Rep. 101-681(I) at  338, reprinted in 1990 U.S.C.C.A.N. at 6618 (Dissenting Views).  During the ensuing floor debate on H.R. 5269, one of the Committee dissenters, Representative McCollum, offered an amendment deleting sections 1403 and 1404 and retaining the existing limits on BOP discretion regarding community confinement, but adding a sentence expressly stating that home confinement was permissible during the six-month-ten-percent release period.  Representative McCollum explained his amendment, stating:

> My amendment would give them that opportunity
> to allow some home confinement with or
> without monitoring by telephonic or
> electronic signaling devices.  The reason I
> am offering this amendment is because in the
> language of the bill as it is now out here
> before us, there has been a concern I have
> had for some time that we are giving a whole
> lot more authority to the Bureau of Prisons
> than we really ought to.  I do not think that
> was anyone's intent.  The language in the
> bill, without being amended, would have
> effectively allowed the Director and the
> Bureau of Prisons to release any prisoner for

---

of Prisons can only confine inmates who committed offenses after November 1987, in penal or correctional facilities, except as provided in 18 U.S.C. section 3624." H.R. Rep. 101-681(I) at p. 144, reprinted in 1990 U.S.C.C.A.N. at 6550.

> any length of time under home custody or
> whatever, so they would not have had to have
> served a day in prison.

136 Cong. Rec. 27587-88 (Oct. 4, 1990).[35]  Representative McCollum
also explained that his proposed provision authorizing home
confinement was "in conformity with current law" – thus
suggesting that he believed the BOP already had authority to
order home detention during the transition period.  Id.  The
McCollum amendment was approved by the House on a voice vote, and
the original language expanding the BOP's authority was thus
defeated.  Id. at 27588.  The more limited amendment was
subsequently incorporated into the final bill that was enacted.
See Pub. L. 101-647, § 2902, 104 Stat. 4913.  This legislative
history strongly supports the conclusion that § 3624(c) reflects
a strict limitation on the BOP's authority to designate prisoners
to community confinement centers.[36]

**C.  The BOP's Change in Procedure Did Not Violate the APA.**

There is no merit to the assertion that the change in BOP

---

[35]  Also at 136 Cong. Rec. H8842-04, *H8917, 1990 WL 146287
(Oct. 4, 1990).

[36]  The Petitioner seeks an order directing the Respondent to
transfer the Petitioner to a CCC no later than six months prior
to his release date "before being allowed during the last ten
(10) percent of his term to be placed in home confinement."
However, the general designation authority of § 3621(b) plainly
does not authorize home confinement.  Since § 3621(b) is the only
conceivable legal basis for exceeding the ten percent limit
applicable under § 3624(c) in this case, the Petitioner's request
for an order transferring him to home confinement cannot possibly
be sustained.

practice was made in violation of the notice and comment requirements of section 553 of the APA, 5 U.S.C. § 553.  The notice and comment provisions of the APA apply "only to so-called 'legislative' or 'substantive' rules; they do not apply to 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.'"  <u>Lincoln v. Vigil</u>, 508 U.S. 182, 196 (1993) (citing 5 U.S.C. § 553(b)(3)(A)).  Interpretive rules "advise the public of the agency's construction of the statutes and rules which it administers," <u>Shalala v. Guernsey Memorial Hospital</u>, 514 U.S. 87, 99 (1995) (internal quotations omitted), whereas legislative rules create rights and obligations that are "not already outlined in the statute itself."  <u>Warder v. Shalala</u>, 149 F.3d 73, 80 (1st Cir. 1998); see <u>Syncor Int'l Corp. v. Shalala</u>, 127 F.3d 90, 94 (D.C. Cir. 1997).

Notably, the BOP's past practice of placing some inmates in CCCs for longer than the six-months-ten-percent period, was described in a BOP Program Statement that itself was not the product of notice and comment and was not a "legislative" or "substantive" rule.  <u>See</u> <u>Reno v. Koray</u>, 515 U.S. at 61 (BOP Program Statement concerning credit for time spent at community treatment center "is akin to an 'interpretive rule' that "do[es] not require notice and comment'""); <u>see also</u> <u>Gunderson v. Hood</u>, 268 F.3d 1149, 1154 (9th Cir. 2001) (BOP program statement

relating to eligibility for early release was an "interpretive" rule). The December 2002 change in BOP procedure was simply a revision to this Program Statement and similarly is not subject to notice-and-comment rulemaking.[37]

More significantly, the BOP's policy change does not create any new law or stake out any new ground that is not already set forth in the statute itself. The court's decision in Warder is therefore controlling here. There the court held that the administrative ruling at issue was an interpretive rule not subject to the APA's notice and comment requirements because "[t]he Ruling does not stake out any ground 'the basic tenor of which [was] not already outlined in the law itself.'" Id. at 80-81, quoting La Casa Del Convaleciente v. Sullivan, 965 F.2d 1175, 1178 (1st Cir. 1992). As in Warder, the BOP's policy directive "does not create any new law or extra-statutory obligation," or "change an existing law or regulation." See Benton v. Ashcroft, 273 F.Supp.2d at 1147. It simply corrects past error and applies existing law.

The fact that the BOP procedure change affects numerous inmates does not transform it into a "legislative" rule. That a

_____

[37] Unlike the prior BOP practice, the new practice is binding on BOP employees, but only by force of the governing statute, 18 U.S.C. § 3621(b) and U.S.S.G. § 5C1.1, not by force of any agency regulation. See Warder, 149 F.3d at 82-83 ("The fact that the Ruling binds HCFA carriers and ALJs is entirely consistent with its status as an interpretative rule.").

policy has general application merely defines it as a "rule"
under APA, <u>see</u> 5 U.S.C. § 551(4); it does not answer the question
whether a rule is legislative or interpretive.  In <u>Warder</u> the
court observed that a rule's public impact is of little
importance in determining whether the notice and comment
requirement applies.  149 F.3d at 80 n.6 (noting that the Supreme
Court "wholly ignored" the public impact in <u>Guernsey</u> and <u>Reno v.
Koray</u>).

    Nor is there any merit to the argument that notice and
comment is required because the new BOP practice represents a
departure from past BOP practice.  The court in <u>Warder</u> rejected
such an argument, stating, "The legal point is clear enough: in
order for notice and comment to be necessary, 'the [later] rule
would have to be inconsistent with another rule having the force
of law, not just any agency interpretation regardless of whether
it had been codified."  <u>Id</u>. at 81, <u>quoting</u> <u>Chief Probation
Officers v. Shalala</u>, 118 F.3d 1327, 1337 (9th Cir. 1997).  In
short, there is no procedural defect in the BOP procedure
change.[38]

    **D.**   **The BOP Procedure Change Is Not Impermissibly
Retroactive.**

       **1.)**   **The Change In BOP Practice Does Not**

---

    [38]  The Government respectfully disagrees with the decisions
in <u>Iacaboni</u>, 251 F. Supp. 2d at 103-40, and <u>Monahan</u>, 276
F.Supp.2d at 212-15, holding otherwise.  <u>And</u> <u>see</u> <u>Mallory v.
United States</u>, 2003 WL 1563764 (D. Mass. 2003) (Woodlock, J.).

**Violate the Ex Post Facto Clause**.

A law violates the Ex Post Facto Clause when it punishes behavior that was not punishable at the time it was committed or increases the punishment beyond the level imposed at the time of commission.  U.S. Const., art. 1, § 10, cl. 1; see Garner v. Jones, 529 U.S. 244, 249-250 (2000); Collins v. Youngblood, 497 U.S. 37, 42, (1990).[39]  "[T]he focus of the ex post facto inquiry is not on whether a  . . . change produces some ambiguous sort of 'disadvantage,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punished."  California Department of Corrections v. Morales, 514 U.S. 499, 506 n.3 (1995).

A new rule, regulation, or policy change that merely corrects an agency's erroneous interpretation of pre-existing law, even if it was a reasonable one, does not offend the Ex Post Facto Clause.  See, e.g., Metheney v. Hammonds, 216 F.3d 1307, 1310-1311 (11th Cir. 2002) (collecting cases).  The clause "does not prohibit . . . the correction of a misapplied existing law which disadvantages one in reliance on its continued misapplication."  Stephens v. Thomas, 19 F.3d 498, 500 (10th Cir.

---

[39]  It is not clear that the Ex Post Facto Clause even applies to an Executive Branch agency's interpretation of a statute, particularly where the interpretation creates no new law but simply corrects a past erroneous interpretation.  Cf. Rogers v. Tennessee, 532 U.S. 451, 462 (2001) ("the Ex Post Facto Clause does not apply to judicial decisionmaking").

1994) (finding no Ex Post Facto violation when department of corrections stopped applying good-time-credit statute to prisoners with life sentences after state attorney general informed department that this application was prohibited by statute); accord Cortinas v. United States Parole Comm'n, 938 F.2d 43, 46 (5th Cir. 1991); Glenn v. Johnson, 761 F.2d 192, 194-95 (4th Cir. 1985); Caballery v. United States Parole Comm'n, 673 F.2d 43, 47 (2d Cir. 1982). "The ex post facto clause of the Constitution does not give [a prisoner] a vested right in . . . an erroneous interpretation" of law. Mileham v. Simmons, 588 F.2d 1279, 1280 (9th Cir. 1979).

Here, the BOP's procedure change did not change the applicable law. Rather, the change merely corrected an erroneous interpretation by the BOP of section 3624(c), which since 1984 has imposed a temporal limit on the BOP's authority to designate an inmate serving a term of imprisonment to a halfway house. Accordingly, the Ex Post Facto clause is not applicable here. See Adler v. Menifee, 293 F.Supp.2d 363, 367 (S.D. N.Y. 2003); United States v. Pena, 2003 WL 21197024, *3 (W.D. N.Y. 2003); Rothberg v. Winn, 03-CV-10568 (D. Mass. 2003) (Stearns, J.).

Furthermore, the BOP procedure change has not increased the punishment the Petitioner will receive for his crime. Instead, it has only potentially changed the place where he will serve a portion of the last six months of his sentence of imprisonment.

In Dominique v. Weld, 73 F.3d 1156 (1st Cir. 1996), the court
held that changes in state policies and regulations which caused
the plaintiff to be terminated from a work release program did
not violate the Ex Post Facto Clause.  73 F.3d at 1161-62.
Without deciding whether the Ex Post Facto Clause was applicable
at all, the court concluded that the changes did not increase the
penalty by which the plaintiff's crime was punishable, but simply
changed the conditions of his confinement.  Id. at 1163.[40]  The
court's decision in Dominique is applicable here, and requires
that the Petitioner's Ex Post Facto claim be rejected.

> **2.)  The Change In BOP Practice Does Not
> Violate the Petitioner's Due Process
> Rights.**

Under a due process analysis, the Petitioner must
demonstrate that he has a cognizable liberty interest in his
placement in a CCC.  In Sandin v. Conner, 515 U.S. 472 (1995),
the Court held that disciplining a prisoner for 30 days in
segregated confinement did not give rise to a liberty interest
protected by the Due Process Clause.  The Court held that, in the
context of prison management systems, liberty interests protected
by the Due Process Clause "will be generally limited to freedom
from restraint which, while not exceeding the sentence in such an
unexpected manner as to give rise to protection by the Due
Process Clause of its own force . . . , nonetheless imposes

---

[40]  Accord United States v. Kramer, 2003 WL 1964489 *4-6
(N.D. Ill. 2003).

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484.

In <u>Dominique</u>, the court applied the <u>Sandin</u> standard to a state prison inmate's claim that the revocation of his work release privileges violated due process. In <u>Dominique</u>, the inmate had participated successfully in a community work release program for three years before his privileges were revoked – not because of any conduct by the inmate, but because of state policy and regulatory changes. The court held that under <u>Sandin</u> the inmate did not have a protected liberty interest in his participation in the work release program. 73 F.3d at 1159-61. The court reasoned that the inmate's transfer to a more secure facility "subjected him to conditions no different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion." <u>Id</u>. at 1160. The hardship "was not 'atypical' in relation to the ordinary incidents of prison life." <u>Id</u>.[41]

Even if the Petitioner could establish a protected liberty interest, any Due Process claim would still fail. While the Due Process Clause encompasses some limitations on ex post facto decision making, <u>see Rogers v. Tennessee</u>, 532 U.S. at 458, its force is more limited. In <u>Rogers</u>, the Court stated that under

---

[41]    <u>Accord Weller v. Grant County Sheriff</u>, 75 F.Supp.2d 927, 932-935 (N.D. Ind. 1999); <u>Asquith v. Volunteers of America</u>, 1 F.Supp.2d 405 (D. N.J. 1998). <u>Compare Kim v. Hurston</u>, 182 F.3d 113 (2d Cir. 1999) (inmate had protected liberty interest in her continued participation in work release program); <u>with Lee v. Governor of New York</u>, 87 F.3d 55 (2d Cir. 1996) (finding no liberty interest in offender's expectation of future participation in work release program).

the Due Process Clause, "a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'"  Id. at 462, quoting Bouie v. City of Columbia, 378 U.S. 347, 354 (1964).[42]  In the instant case, for the reasons stated earlier, the government's interpretation of § 3624(c) is not "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue."  Rogers v. Tennessee, 532 U.S. at 462.

---

[42]  The Court in Rogers v. Tennessee held that the Tennessee Supreme Court's decision did not offend this standard and therefore did not violate the Due Process Clause.  532 U.S. at 462-467.

**CONCLUSION**

For the above reasons, the Petition of David Sloane for habeas corpus should be dismissed.

                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                    United States Attorney

Dated: July 13, 2004      By:  /s/ Christopher R. Donato
                                    CHRISTOPHER R. DONATO
                                    Assistant U.S. Attorney
                                    John Joseph Moakley Courthouse
                                    One Courthouse Way, Suite 9200
                                    Boston, Massachusetts 02210
                                    (617) 748-3303

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, together with the accompanying Exhibits 1 through 5 and Declaration of Patrick W. Ward, were served upon Petitioner M. William Potts, Reg. No. 24866-038, Unit 1, FMC Devens Camp, P.O. Box 879, Ayer, MA 01432 by first class, postage prepaid mail on this date.

July 13, 2004                       /s/ Christopher R. Donato
                                    Christopher R. Donato
                                    Assistant U.S. Attorney