UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

M. WILLIAM POTTS,

    Petitioner

vs.

DAVID L. WINN, Warden
Federal Medical Center, Devens,

    Respondent

Civil Action No. 04-40068-GAO

**PETITIONER'S OPPOSITION AND MEMORANDUM
IN OPPOSITION TO MOTIONS OF RESPONDENT
TO DISMISS AND TO EXCEED PAGE LIMIT
AND TO MEMORANDUM OF RESPONDENT IN SUPPORT OF THOSE MOTIONS**

**SUMMARY**

    In support of his opposition, the Petitioner asserts that the BOP's 12/20/02 Policy is based upon an erroneous interpretation of law and violates APA 5USC§551 and §553 and the due process clause of the Constitution. Despite its unnecessary length, the government's memorandum is not supported by a plain-language reading of the statutes, legislative history nor numerous decisions regarding the validity of the BOP's Policy. The Respondent's Motion to Dismiss should, therefore, be denied and the relief requested in the Petition should be granted.

    The Petitioner offers the following summary of his opposition:

1.   The overwhelming weight of case law, as demonstrated by a summary of decisions shows, that the BOP's 12/20/02 Policy is invalid.

2.   Innumerable decisions, including several in the District of Massachusetts, clearly demonstrate that the administrative-remedy-exhaustion requirement does not apply to 28USC§2241 writs of habeas corpus with issues such as the

Petitioner's. The government's argument in relation to the exhaustion of administrative remedies is so frivolous, irresponsible and factually incomplete that it may warrant sanctions by the Court.

3. The government's memorandum is irresponsibly long, represents a grossly abusive filing and is so disrespectful of this Court that it borders on being ludicrous. The Respondent's motion to exceed the page limit should, therefore, be denied.

**ARGUMENT**

1. <u>The overwhelming weight of case law, as demonstrated by a summary of decisions, shows that the BOP's 12/20/02 Policy is invalid.</u>

A. The table on the following page lists the cases known and available to the Petitioner where courts have ruled that the BOP's 12/20/02 Policy is invalid.

B. A full reading of the statutes shows that the BOP's Policy is an erroneous interpretation of the law:

The government's memorandum erroneously focuses exclusively on 18USC§3624(c) and ignores 18USC3621(b), which really defines the BOP's authority for CCC placements as had been the basis for the pre-December 2002 BOP practice for over 17 years. A plain language reading makes this clear. In fact, §3624(c) is not about CCC placement as there is no mention of CCC in its language. See <u>Iacaboni</u> 251 F.Supp. 2d 1015 (D. Mass 2003). It is clear that §3624(c) is about facilitating a transition and a pre-release entitlement, as indicated by "the BOP...shall assure..." and "...will afford the prisoner...", and not about limiting the BOP's authority. See Bench opinion of Hon. K. Wood in <u>Greenfield</u> No. 03-cv-8205 (KMW)(S.D.N.Y. Oct. 30, 2003). The BOP's CCC placement authority comes from §3621(b). See <u>Iacaboni</u>,

TABLE

Court Rulings Invalidating the BOP 12/20/02 Policy

| Decisions | End-of-the Sentence Case | Erroneous Interpret. | Violation of APA Statute | Violation of Ex Post Facto | Violation of Due Proc. |
|---|---|---|---|---|---|
| Zeigler | * | X | X | X | |
| Colton | * | | X | | |
| Iacaboni | | X | X | X | X |
| Greenfield | * | X | X | | |
| Bacquie | * | X | X | X | |
| Distefano | * | X | | | |
| Monahan | | | | | |
|   -Monahan | | X | X | X | X |
|   -Sardinha | | X | X | X | X |
|   -Costello | | X | X | X | X |
|   -Pereira | * | X | X | X | X |
| Cato | * | X | X | X | |
| Zucker | * | X | | | |
| Byrd | | X | X | X | X |
| Cioffoletti | * | X | X | X | X |
| Hurt | * | | X | | |
| Culter | | | | | X |
| Ashkenazi | | | | X | |
| Ferguson | | X | X | | |
| Howard | | X | X | | |
| Mallory | | | X | | |
| McDonald | | | X | | |
| Tipton | | X | X | X | X |
| Tkabladze | | X | | | |

---

Footnote: Citations for decisions listed in table above

| | |
|---|---|
| Zeigler v Ashcroft | Civil No. WMN-04-719 (D.Md. 2004) |
| Colton v Ashcroft | 299 F. Supp. 2d 681 (E.D. Ky. 2004) |
| Iacaboni v Ashcroft | 251 F. Supp. 2d 1015 (D. Mass. 2003) |
| Greenfield v Menifee | No. 03-cv-8205 (KMW) (S.D.N.Y. Oct. 30, 2003) |
| Bacquie v Menifee | 04-civ-688 (DC) U.S.D.C S.D.N.Y. |
| Distefano v FBP | 2004 WL 396999 (S.D.N.Y. March 4, 2004) |
| Monahan V Winn | 276 F. Supp. 2d 196 (D. Mass. 2003) |
| Cato v Menifee | 2003 WL 22725524 (S.D.N.Y. Nov. 20, 2003) |
| Zucker v Menifee | 2004 WL 102779 (S.D.N.Y. Jan. 21, 2004) |
| Byrd v Moore | 252 F. Supp. 2d 293 (W.D.NC.2003) |
| Cioffoletti v FBP | 2003 U.S. Dist. Lexis 21853 (Nov.6, 2003) |
| Hurt v FBP | 5:03-cv-265-4 (DF) (M.D. Ga. Aug. 29, 2003) |
| Culter v US | 241 F. Supp. 2d 19 ( D.D.C. 2003) |
| Ashkenazi v AG | 246 F. Supp 2d 1 (D.D.C. 2003) |
| Ferguson v Ashcroft | 248 F. Supp.2d 547 (M.D. La 2003) |
| Howard V Ashcroft | 248 F. Supp. 2d 518 (M.D. La 2003) |

(Continued on next page)

Monahan, Greenfield, Zucker, Cato, Ferguson.

> "The government reads the restricted language 'not to exceed six months' as restricting the BOP's authority to make any transfer to a transitional location before the six month/10 percent point. In my view, that is incorrect because the BOP's authority to transfer a prisoner to a CCC does not come from such 3624(c) at all. Rather it comes from 3621(b)." Bench Opinion of Hon. K. Wood Greenfield.

The government cites Turano, Goldings, Rothberg, Mikutowicz, and Kennedy where the BOP policy was upheld. All of these decisions cited or relied upon Judge Lasker's Kennedy 03-cv-10568-MEL (D. Mass. July 9, 2003) memorandum stating that §3624(c) is the controlling statute. Judge Gertner noted in Monahan that this position was based on an incomplete analysis.

> "The Kennedy analysis stops short, however -- it recognized that §3624(c) did not require that the BOP do anything until Kennedy met the 10 percent marker, and stopped there. Left to consider is whether the BOP was allowed to move Kennedy into community confinement under §3621(b). Section §3624(c) requires the BOP to take steps to transition the prisoner back into society (steps that may, in its discretion under §3621(b), include release into community or home confinement programs, as well as other meaningful gestures at pre-release transitioning devised or sponsored by the BOP). It does not require that the BOP send prisoners to community confinement during the phase-in period. Likewise, however, it does not curtail the BOP's discretion under §3621(b), vindicated in this decision, in Iacaboni, and elsewhere around the nation, to move prisoners into community confinement as and when appropriate.
>
> "Given the crystal-clear language of §3624(c), I can only conclude that the BOP's regular practice of releasing prisoners into Coolidge House at the six-month mark -- and not the 10 percent mark -- of their sentences constituted an exercise of the discretion afforded to the Bureau under §3621(b). Indeed, the DAG Opinion seems to confirm this -- as it speaks in the language of §3621(b) on this issue (what the BOP is allowed to do), and not §3624(c) (what it is required to do)...." Monahan

---

Footnote: Continued from previous page

| | |
|---|---|
| Mallory v US | 2003 WL 1563764 (D. Mass. 2003)(Woodlock, J.) |
| McDonald v FBP | No. 1:03-cv-235-RWS (N.D. Ga Feb. 14, 2003) |
| Tipton v FBP | 266 F. Supp. 2d 633 (D. Md 2003) |
| US v Tkabladze | cv-03-01152-RMT (C.D. Ca May 16, 2003) |

When, as in this case, an agency "corrects" or changes a long-established interpretation of one of it's rules, the Supreme Court has said that such changes and new interpretation are not entitled to deference: "The Supreme Court has also refused to extend deference to an agency's interpretation of a regulation when...it conflicts with the agency's previous interpretation of the same regulation. See Norfolk S. Railway Co. v. Shanklin, 529 US 344, 356 (2000)." Oregon v. Ashcroft, 368 F 3d 1118, 1130 (fn 11) (9th Cir. 2004).

Relying on this authority derived from §3621(b), the BOP for over 17 years had been placing inmates into CCC's for longer than ten percent of their sentence and in some cases greater than six months. The common practice at FMC Devens prior to 12/20/02 had been to transfer inmates to a CCC six months before their statutory release date. Despite this well-established practice, the government claims that under §3621(b) the BOP does not have this authority and is limited by §3624(c). As shown by case law cited above, this interpretation is erroneous.

> The "... BOP's new interpretation of the relevant statutes is contrary to a plain reading of the statutes, inconsistent with the prior rational interpretations of the statute propounded by both the BOP and OLC, and not supported by the legislative history surrounding the enactment of the statutes in 1984." Zucker.

C. The Respondent's reference to legislative history doesn't support the BOP's position.

It is a clearly-established practice in the First Circuit that a court is not to consult legislative history if -- as in this situation -- the meaning of the statute is clear from its plain language. There is, hence, no need to turn to the legislative history.

The government's memorandum, however, devotes six pages to

selective references to legislative history and fails to make any point that may supercede the plain-language reading. This selective reference ignores the net bottom line: the Congress debated changes to §3624(c) in 1990, 1994, 1995 and 1996 and made no change in relation to BOP's CCC placement policy, well known to the Congress and other branches of the government.

D.  The 12/20/02 Policy change violates APA 5USC§551 and §553. Several court decisions have declared that BOP and DOJ's actions since December 2002 and their effects indicate that the Policy change represents substantive rule making. See Iacaboni, Monahan, Hurt, Greenfield, Colton, Cioffoletti.

Since the BOP did not follow the notice and rule-making provisions of the APA law, the 12/20/02 Policy is invalid.

E.  In defense against the government's comment that the Petitioner does not "develop any independent argument," the Petitioner can only cite Judge Glasser's statement at the end of his opinion rejecting the arguments made by the government in Cioffoletti:

> "The cases cited above [Culter; Ashkenazi; Howard v Ashcroft, 248 F. Supp. 2d 518 (D.Ct.M.D.La 2003); Byrd; Tipton; United States v Serpa, 251 F. Supp. 988 (D.Mass. 2003)] found the conclusion of the OLC Memorandum and the analysis of the statutes upon which that conclusion was based, wanting on a variety of grounds.
> "Because I find the conclusions reached and the reasoning which led to the conclusions [in the cases] compelling, I adopt and follow them. To do more would be an exercise in creative re-writing and a pretense of originality."

2.  Innumerable decisions, including several in the District of Massachusetts, clearly demonstrate that the administrative-remedy-exhaustion requirement does not apply to similar 28USC§2241 writs of habeas corpus. The

<u>government's argument in relation to the exhaustion of administrative remedies is so frivolous, irresponsible and factually incomplete that it may warrant sanctions by the Court.</u>

 A. Since December 2002, numerous §2241 petitions seeking relief from the BOP's 12/20/02 Policy have been filed in courts across the country. The following is a list of nineteen cases known to the Petitioner where courts specifically held, stated by dictum, or concluded inferentially by their results that exhaustion of administrative remedies is <u>not</u> required in cases which raise precisely the issues raised by this Petition. The <u>government</u> <u>lost</u> its exhaustion of administrative remedies argument in every one of these nineteen cases; including two cases they won on the merits (the government lost seventeen of these cases on the merits). The government's memorandum cites five older cases, none dealing with the <u>futility</u> of the exhaustion of administrative remedy issue, but omits any reference to any of the following or similar cases:

<u>Ashkenazi v Attorney General</u>
<u>Bacquie v Menifee</u>
<u>Byrd v Moore</u>
<u>Cato v Menifee</u>
<u>Cioffoletti v Federal Bureau of Prisons</u>
<u>Cohn v Federal Bureau of Prisons</u> 302 F. Supp. 2d 262 (S.D.N.Y. 2004)
<u>Colton v Ashcroft</u>
<u>Culter v United States</u>
<u>Distefano v Federal of Prisons</u>
<u>Ferguson v Ashcroft</u>
<u>Greenfield v Menifee</u>
<u>Kennedy v Winn</u>
<u>Monahan v Winn</u>
<u>McDonald v Federal Bureau of Prisons</u>
<u>Tipton v Federal Bureau of Prisons</u>
<u>United States v Iacaboni</u>
<u>United States v West</u> 2003 WL 1119990 (Feb. 20, 2003) (E.D. Mich. 2003)
<u>Zeigler v Ashcroft</u>
<u>Zucker v Menifee</u>

 B. The government's argument that "The Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation

Reform Act" is irresponsible. On one hand the government takes a position that any interpretation of the statute by the BOP contrary to the DOJ's 12/13/02 Memorandum is a violation of the law. On the other hand, it asserts that the Petitioner's claim (that the new policy is an erroneous interpretation of the law) must be pursued through the BOP's administrative remedy process. The government's memorandum states: "The Response for [the final step in the remedy process] remains pending at this time. As such, the Petitioner has not exhausted his administrative remedies." One doesn't need to be a rocket scientist or an accomplished astrologer to predict what the BOP's reply to the Petitioner's BP-11 (the final step in the administrative-remedy process) will be. To the best of the Petitioner's knowledge, the BOP has consistently denied every administrative-remedy request raising the identical issue by other inmates. In relation to this issue, this process is so futile that it is defacto exhausted before its commencement.

Commenting on this exercise in futility, Judge Lasker wrote: "If there ever was a case in which the exhaustion of remedies is futile it is this ... this is not a case about prison conditions." <u>Kennedy</u>.

C.   Not only is the judicial authority on exhaustion so overwhelmingly against the government's argument, the government's memorandum is factually incomplete. In this case the facts make this an absurd issue.

Even though he believes it is not required, the Petitioner has filed (as acknowledged by the government's memorandum) <u>every</u> document needed to seek an administrative remedy and, as predictable, has been denied the relief at each level. On July 13, 2004, the date of the Respondent's memorandum, the government knew that the Petitioner had taken all the steps in this process and the only step remaining was a response from the BOP

-8-

Central Office, which was due by July 24, 2004. The government knew on July 13, 2004 that, anticipating a response from the Central Office by July 24, the administrative-remedy process would be exhausted by the time the Court considers this Petition. Knowing this and even the substance of the Central Office's response and still asserting that "the Petitioner has not exhausted his administrative remedies" is preposterous. On July 21, 2004, the Petitioner was advised that the BOP had extended the due date for their response to August 13, 2004.

  D.  As shown above, the government's argument is so frivolous, irresponsible and factually incomplete on the issue of exhaustion of remedies that it leads one to ask the following question:

  In this case, in this Court, at this time and on this record, is the government's defense of failure to exhaust administrative remedies "warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"? F.R.Civ.P. Rule 11(b)(2).

3.  <u>The government's memorandum is irresponsibly long, represents a grossly abusive filing and is so disrespectful of this Court that it borders on being ludicrous and the Motion to exceed page limit should be denied.</u>

  One can understand a respondent's motion to exceed page limit if the response is an honest effort to address legal issues raised by a petition. The Petitioner believes that it is not too much to expect the United States Attorney's office, with its vast resources, staffed with a number of attorneys and equipped with modern computers and word processors, to respond to a pro se habeas corpus petition in a thoughtful and deliberative manner. The government's response couldn't be more opposite of this. The government's

memorandum appears to have been "cut and pasted" by lifting entire sections straight out of other briefs and filings so <u>negligently</u> that the writer didn't even bother changing the original (other) petitioner's name in the document.

Simply stated, the government's memorandum is too long not because it addresses the issues raised by this Petition, but on the contrary, it is too long because it devotes:

* 3 pages (pg. 25-28) to a possible policy-invalidating issue <u>not even raised</u> by the Petitioner (ex post facto);

* 3 pages (pg. 3-6) to the exhaustion of administrative remedy argument -- an issue that, as shown above, has been <u>rejected</u> in almost every single case in courts across the country and it's an issue that the government knows will become moot by the time the Court reviews the Petition.

* 6 pages (pg. 16-22) to a legislative history argument which it has taken, apparently without editing or summarizing, from the briefs filed by the DOJ in other cases in this district and elsewhere and which has been rejected in virtually all cases which have addressed it.

Two glaring errors in the government's memorandum exemplify how <u>abusive</u> this filing is. These two errors -- more than typographical mistakes -- show a lack of attention to the facts of the Petition and a sloppiness evidencing the cavalier manner in which such a serious petition -- a habeas corpus motion -- was taken by the government. These two errors are:

* On page 31, the government's memorandum concludes: "For the above reasons, the Petition of David Sloane for habeas corpus should be dismissed." David Sloane is not a party to this Petition. The

-10-

Petitioner herein is M. William Potts.

\*   On page 16 in Footnote 30, the government's memorandum asks the reader to "See App. 158-159." There is no such appendix in this case. There *is* such an appendix in a case pending in the United States Court of Appeals in which a decision is pending on most of the issues raised by this Petition.

Another *irresponsible* statement is exemplified by the government's comment on page 14 that "the guidelines clearly indicate that 'imprisonment' does <u>not</u> include placement in a CCC," citing <u>United States v Citron-Fernandez</u>, 356 F3d 3340 (should be 340) (1st Cir. 2004), while ignoring the fact that <u>Citron-Fernandez</u> deals with the question of whether home confinement is a form of imprisonment. The Petitioner finds nothing in the holding of <u>Citron-Fernandez</u> to be contrary to any argument in this Petition. This is not a case about the guidelines nor has the Petitioner contended that "home confinement" is a form of "imprisonment."

Indeed, in its own FN 7, the First Circuit was prescient as to any effort to apply <u>Citron-Fernandez</u> beyond its own facts: "Our interpretation of imprisonment does not necessarily apply to provisions other than §5C1.1 [of the Sentencing Guidelines]," citing the commentary to §1B1.1 on "Definitions of terms" and the "caution against attempting to achieve definitional coherence across numerous provisions." See <u>United States v Rasco</u>, 963 F2d 132 (6th Cir. 1992). 356 F3d at 347.

The government's memorandum is disrespectful of this Court because it shows that, despite the 28 days given to respond, the government did not take the time to read the Petition carefully or to prepare an intelligent responsive memorandum. The Petitioner has <u>not</u> even raised <u>ex post facto</u> as a ground for invalidating the BOP Policy. Yet, the government has

-11-

"cut and pasted" 3 pages of arguments defending the BOP Policy on this ground. (Several courts <u>have</u> ruled the BOP Policy invalid on this ground)

In some respects the government's memorandum is very similar to one put forth in <u>Zeigler</u>, which brought the following from the district judge:

> "In this action, the government has submitted a 50 page brief defending the new policy and raising various procedural challenges to Plaintiff's instant action. Curiously, the government's brief completely ignores the growing body of case law refuting precisely the same positions that it now advances. The government's justification for this ommission became apparent at last Friday's hearing. In the government's view, these decisions invalidating the new policy are simply the outgrowth of an 'emotional' reaction on the part of the judiciary to the perceived diminishment of it's role, and loss of it's discretion, in the sentencing process, and for that reason, these holdings should be ignored."
> (Slip opinion Pg. 3).

Should the Court determine that a sanction against the government be appropriate, the Petitioner respectfully requests that any sanction issued by the Court <u>not</u> further <u>delay</u> the Court's consideration of the Petitioner's request for Writ of Habeas Corpus, as this Petition is time sensitive.

**CONCLUSION:**

For the reasons stated, this court should DENY the Motion of Respondent David L. Winn to Dismiss, and proceed to GRANT the relief requested in favor of the Petitioner -- M. WILLIAM POTTS -- on the merits.*

dated: July 14, 2004

Respectfully Submitted,

/M. William Potts/

M. William Potts
Reg. # 24866-038 Unit I
Federal Medical Center Devens
PO Box 879
Ayer, MA 01432

\* See footnote on the next page.

> The petitioner was assisted with legal research and the preparation of this Opposition by an inmate at FMC Devens during his leisure time pursuant to 28 CFR §543.11(f)(1).

-12-

CERTIFICATE OF SERVICE

   I certify that the foregoing document was served upon Christopher R. Donato, Assistant United States Attorney, by my depositing a copy thereof in the internal mailing system at Federal Medical Center, Devens, Unit I (Camp), postage prepaid, addressed to the Office of the United States Attorney, John Joseph Moakley Courthouse, One Courthouse Way, Suite 9200, Boston, MA 02210 on this 26th day of July 2004.

   I swear under the penalties of perjury that the foregoing is true on this 26th day of July 2004.

                                          /s/ M. William Potts
                                          M. WILLIAM POTTS, Pro Se
                                          #24866-038   Unit I
                                          Federal Medical Center, Devens
                                          PO Box 879
                                          Ayer, MA 01432

---

\* Footnote on page 22 of the government's memorandum misconstrues the Petitioner's request for relief #4 (Page 12 of the Petition) for 6 months Halfway House. As is clear from the actual dates set forth in Paragraph 5 on Page 2 and Paragraph 26 on Page 9 of the Petition the Petitioner seeks 6 months Halfway House eligiblity to <u>include</u> a last 10% of Home Confinement. The Home Confinement is not additive to the 6 months but is included in the 6 month period.